IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LaVERN I. MEDEARIS and RUSSELL L. MEDEARIS, on behalf of themselves and all others similarly situated, | CV. 07-723-PK |
| | FINDINGS AND RECOMMENDATION |
| Plaintiffs, | |
| v. | |
| OREGON TEAMSTER EMPLOYERS TRUST, THE WILLIAM C. EARHART COMPANY, INC., an Oregon corporation, and DOES I-X, | |
| Defendants. | |

PAPAK, Magistrate Judge:

Plaintiffs LaVern and Russell Medearis ("Plaintiffs") filed this class action on behalf of

themselves and all others similarly situated[1] alleging 13 claims, including ERISA claims under -

29 U.S.C. § 502(a)(1)(B), § 502(a)(3), and § 502(c)(1), as well as state law claims for unfair

---

[1]This case has not yet been certified as a class action under Fed. R. Civ. P. 23.

Page 1 - FINDINGS AND RECOMMENDATION

trade practices in violation of ORS 746.075, misrepresentation, elder abuse in violation of ORS 124.100, and estoppel.

Before the court is Defendants', the Oregon Teamster Employers Trust and The William C. Earhart Company's (together "Defendants"), Motion for Summary Judgment [No. 9]. Defendants have moved against twelve of the thirteen claims.[2] At oral argument, Plaintiffs moved for leave to file an amended complaint to address some issues regarding the relief sought in claims one through four and the validity of claims eleven and twelve.  The court granted the motion and this Findings and Recommendation analyzes the allegations contained in the amended complaint [No. 20], which was filed on October 6, 2007.

For the reasons set forth below, Defendants' Motion for Summary Judgement should be granted in part and denied in part.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S. Ct. 1261 (1996).  In evaluating a motion for summary judgment, the

---

[2]The thirteenth claim arises out of a request for documents made in 2006, and asserts that Plaintiffs are entitled to penalties under ERISA § 502(c)(1) because Defendants failed to provide requested documents to them within 30 days of their request. Defendants do not move against this claim because the parties have agreed that discovery is necessary to fully address that claim.

district courts of the United States must draw all reasonable inferences in favor of the

nonmoving party, and may neither make credibility determinations nor perform any weighing of

the evidence.  *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[3]

The Oregon Teamster Employers Trust ("Trust") is an ERISA regulated multiemployer

welfare benefit plan.  According to the Trust, the Board of Trustees of the Trust has fiduciary

responsibility for overseeing the Trust's benefit plans. The Trust employs William C. Earhart

Company ("Earhart Co.") as a contract third-party administrator.

The Trust's Retiree Plan ("Plan") provides a variety of options for retirees, including a

self-funded Trust Plan (medical only, prescription only, or both), Kaiser, Pacificorp, Secure

Horizons, Regence BCBSO options (Preferred Choice 65 and First Choice 65) and Providence

Good Health Plan.  The Retiree Plan is required to be self-supporting.  Retiree benefits are not

pre-funded and there is no long term funding to support the Retiree Plan. The Retiree Plan's

source of income is a $26.50 per month collectively bargained contribution paid upon certain

active employees and retiree self-payments.

The Trust subsidizes non-medicare retirees and dependants indirectly by combining their

higher claims experience with active employees participating in one of the Trust's medical

options.  The Trust Subsidizes medicare-eligible retirees by paying a potion of their premium.

---

[3]This factual background is based solely on Defendants' Concise Statement of Fact.
Plaintiffs did not file a Concise Statement of Fact, but indicated at oral argument that they
concur with the facts set forth by Defendants and, more importantly, that there are no unresolved
material issues of fact and that the issues presently before the court may be decided as a matter
of law.

Page 3 - FINDINGS AND RECOMMENDATION

The amount of the subsidy is determine annually by the Board of Trustees. A greater subsidy is provided disabled retirees. Spouses do not receive a subsidy. In 2005, a subsidy of $50 per month per retiree was provided.

In 2005, premiums for some of the Secure Horizons plans dropped. The Board of Trustees made the decision to maintain the same monthly self-payment rates for any option that went down rather than have them fluctuate.

The Medearises were participants in the Trust. Prior to 2005, the Medearises participated in the Trust's self-funded retirement plan. During the open enrollment period for 2005, they switched from the self-funded retiree plan to the First Choice 65 Plan provided by Regence. The change went into effect on February 1, 2005. The Medearises ended their participation in the Trust effective May 31, 2005.

Renewal information conveyed in a November 23, 2004, letter from the Trust indicated that prescription drugs were included in the Preferred Choice 65 and First Choice 65 options. This was an error. The Trust contacted by phone the participants in those plans to inform of the error and allowed those participants to switch to another option.

## SUMMARY OF CLAIMS

The first twelve claims involve the same factual allegations and Plaintiffs divide them into two categories: claims for misrepresentation and claims for excess premiums. Claims one, three, five, seven, nine, and eleven are based on the allegation that the Trust made misrepresentations concerning the availability of prescription drug coverage under the Preferred Choice 65 and First Choice 65 options offered in 2005. Claims two, four, six, eight, ten, and twelve are based on the allegation that First Choice 65, Preferred Choice 65, and Secure

Page 4 - FINDINGS AND RECOMMENDATION

Horizons plans cost substantially less than what the Trust charged its participants. For each misrepresentation claim, there is a corresponding excessive premiums claim under the same ERISA section or provision of state law: claims one and two allege claims under §502(a)(1)(B); claims three and four allege claims under §502(a)(3); claims five and six allege unfair trade practices in violation of ORS 746.075; claims seven and eight allege state law claims for misrepresentation; claims nine and ten allege elder abuse in violation of ORS 124.100; and claims eleven and twelve allege state law claims for equitable estoppel.

## ANALYSIS

Defendants' motion for summary judgment can be divided into two arguments. First, Defendants argue that Plaintiffs' ERISA claims (claims one through four) are improper because they seek compensatory relief not available under ERISA's civil enforcement provisions. Second, Defendants argue that Plaintiffs' state law claims (claims five through twelve) are pre-empted by ERISA.

## I.    Claims one and two –  §502(a)(1)(B)

Claims one and two are brought under the civil enforcement provision of ERISA §502(a)(1)(B) and seek "the benefits denied them." Defendants move against both claims on the grounds that they seek compensatory relief not available under ERISA's civil enforcement provisions.

Under § 502(a)(1)(B), a civil action may be brought by a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  ERISA § 502(a)(1)(B),  29 U.S.C.A. § 1132(a)(1)(B).  "The relief expressly provided is to secure benefits under the plan,

Page 5 - FINDINGS AND RECOMMENDATION

rather than damages for a breach of the plan." *Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 479 (S.D.N.Y. 2004), *citing Turner v. Fallon Cmty Health Plan, Inc.*, 127 F.3d 196, 198 (1st Cir. 1997).

### A.    Claim one

Claim one alleges that Defendants misrepresented to Plaintiffs that the First Choice 65 Plan included a prescription drug benefit.  Plaintiffs allege that they purchased the Plan in reliance on that misrepresentation and later found out that there was no prescription drug benefit. Plaintiffs allege that they are entitled to the benefits denied them.

In *Nechis*, the plaintiffs were denied chiropractic coverage. In a class action, plaintiffs sued to recover "past coverage benefits in an amount equal to the difference between the value of the coverage benefit purchased and the value of the coverage benefit actually provided."  The court held that plaintiff could not bring this action under 502(a)(1)(B) because the action sought what could only be characterized as damages for breach of the plan, and this remedy is not available under 502(a)(1)(B).  *Id.* at 479.

Plaintiffs argue that they are seeking reimbursement for prescriptions they purchased, and that reimbursement is an available remedy under § 502(a)(1)(B) because it is an accrued benefit. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 211 (2004) ("Upon the denial of benefits, respondents could have paid for the treatment themselves and then sought reimbursement through a § 502(a)(1)(B) action. . . .").  In *Davila*, Davila alleged that the plan refused to pay for Vioxx after it was prescribed by Davila's physician.

Defendants argue, and I agree, that Plaintiffs have not made allegations in their amended complaint sufficient to bring them within the holding of *Davila*.  While Plaintiffs amended their

complaint to allege they are seeking "the benefits denied," rather than "the value of the benefit

denied them (i.e., the value of one year's worth of prescription drug coverage each)," Plaintiffs

still do not allege that they purchased prescription drugs, submitted a claim to the plan, and had

that claim denied. Nor do they allege that they were prescribed drugs that they could not

purchase as a result of the lack of coverage.

In *Nechis*, one of the plaintiffs argued that the remedy she sought was distinguishable

from the rest of the class because she had suffered an actual injury – the denial of benefits.

Specifically, the plaintiff claimed she had received chiropractic care, paid out of pocket for that

care, and been denied reimbursement. The court noted that this was not the relief the complaint

sought. 328 F. Supp. 2d. at 479. The court also went on to state that even if the complaint had

alleged the actual denial of benefits, plaintiff could not allege a reimbursement claim in a class

action suit:

> "[plaintiff] purports to sue on behalf of a class, but claims for
> benefits due but not paid are too individualized to be the subject of
> a class action. *See Miner v. Empire Blue Cross/Blue Shield,* 2001
> WL 96524, *2 (S.D.N.Y.2001) ("Insofar as [plaintiff] seeks
> reimbursement under his plan for unpaid claims, he may not bring
> this claim as a class action. Any such claim for benefits requires an
> individualized assessment of each plaintiff's case."). In order to
> maintain a class action, Mady would have to allege some injury
> common to all the members of the class. The class is defined as
> "all persons who are or were Oxford policy holders whose policy
> includes coverage for chiropractic care." (Compl.¶ 14.) The class-
> wide injury-diminution of the value of the policy-is *not* tethered to
> a specific denial of benefits. Thus, it cannot be the subject of a
> claims brought pursuant to § 502(a)(1)(B).

*Id.*

Here, Plaintiffs suffer from the same problems as the plaintiffs in *Nechis*.  Plaintiffs in this case have not alleged a reimbursement claim and, if even if they had, reimbursement is likely too individualized a remedy for a class action.[4]  Defendants' motion should be granted as to claim one.

**B.    Claim two**

Claim two alleges that Defendants violated various fiduciary duties by charging Plaintiffs more than the cost to the Plan.  According to Plaintiffs, the Plan states that "[t]he Trust bases the Retiree self-payment on the cost of each option."  Plaintiffs allege that having their premiums based on the cost of the Plan was a benefit, and that they were denied that benefit because self-payments were not based on the cost to the Plan.  Plaintiffs seek "the benefits denied them."

Plaintiffs again argue that the remedy is available under § 502(a)(1)(B) because Plaintiffs seek reimbursement of the excess portion of the premiums that were not based on the cost to the Plan.  In support of their position, Plaintiffs rely on three cases: *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997), *Heffner v. Blue Cross and Blue Shield of Alabama*, 443 F.3d 1330 (11th Cir. 2006), *and Magliulo v. Metropolitan Life Ins. Co.*, 208 F.R.D. 55 (S.D.N.Y. 2002).

In *Forsyth*, a provision within the policy at issue provided that the employee/insured would pay 20% of all covered charges incurred while in a hospital and that Humana Insurance would be responsible for the remaining 80%.  From 1984 to 1988, Humana Insurance obtained substantial discounts for services rendered to the insureds.  Instead of sharing those discounts with the insureds by reducing the co-payments due, Humana Insurance only applied the

---

[4]The issue of whether this case is properly brought as a class action is not presently before the court and, in any event, need not be resolved as I find that Plaintiffs have not alleged an articulable reimbursement claim.

discounts to the 80% of the charges for which it was responsible. A class of the insured co-payors brought suit, and the Ninth Circuit held that the plaintiffs were "entitled to recover, in the form of damages pursuant to their claim under [§ 502(a)(1)(B)], all amounts they were forced to pay over and above their contractual co-payment obligation." 114 F.3d at 1475.[5]

In *Heffner*, the plaintiffs filed a suit seeking a refund of their calendar year deductibles, claiming that the summary plan descriptions issue by Blue Cross stated that there was no calendar year deductible. The Eleventh Circuit construed plaintiffs' claim as arising under § 502(a)(1)(B). The court then determined that a statement that "there will be no deductible" is a right under the plan and benefit under the plan, and that an action to enforce that right may properly be brought under § 502(a)(1)(B). 443 F.3d at 1338.

In *Magliulo*, the plaintiff purchased medical insurance through defendants' ERISA-regulated health plan. Under the terms of that plan, participants and their dependants who receive Medicare pay a reduced premium. The plaintiff alleged that she was charged the higher premium even after she became eligible for Medicare. The plaintiff filed a claim under § 502(a)(1)(B), seeking the amount she was overcharged for premiums. The defendants ultimately refunded plaintiff's excess premium payments, but did not pay plaintiff interest for the time defendants improperly kept the overcharged premiums. The defendants then filed a motion to dismiss, arguing that an insurance premium is not a "benefit" of an insurance plan. The District Court for the Southern District of New York held that the reduced premium was a benefit under

---

[5] The district court in *Forsyth* had limited damages to the excess charges the co-payors paid, specified the methodology for calculating the damages for these class members, and ultimately adopted a schedule of damage awards by which the co-payors were reimbursed the amounts they had been overcharged on their co-payments. 114 F.3d at 1473.

the Plan,  that the plaintiff had a contractual right under the Plan to a reduced premium, and,

therefore, that the plaintiff could bring an action pursuant to §502(a)(1)(B). 208 F.R.D. at 58.

Defendants argues that *Forsyth*, *Heffner*, and *Magliulo* are distinguishable because those

cases involve a claim to enforce a specific element of an employee benefit plan whereas here

Plaintiffs' claim two does not involve a specific plan rate, but rather a general assertion that the

rates were inflated. Defendants' argument is not persuasive. A promise to charge the insured the

cost of the plan to the Trust is not significantly different from a promise to an insured to pay

80% of hospital charges, or not charge a deductible, or reduce the premium upon Medicare

eligibility. Here, Plaintiffs point to specific language in the Plan that says "the Trust bases the

Retiree self-payment on the cost of each option."  A premium based on the actual cost of the plan

is a benefit, and Defendants' motion should be denied as to claim two.

## II.    Claims three and four (§502(a)(3))

Claims three and four are brought under the civil enforcement provision of ERISA

§502(a)(3).  29 U.S.C. §1132(a)(3).  In claim three, Plaintiffs ask the court to "force Defendants

to disgorge the profits made from their breach of fiduciary duty, restore the premiums paid by

the participants and their beneficiaries, and award any other relief  required to remedy

Defendants' wrongs."  Claim four alleges the same request for relief, but asks the court to restore

"the amounts overpaid by the participants and their beneficiaries."   At oral argument, Plaintiffs

clarified that claims three and four are seeking rescission and are pled in the alternative to claims

one and two.  In other words, if the Plaintiffs cannot recover the benefits denied them under

claims one and two, then the Plaintiffs seek to rescind the agreement.

§502(a)(3) provides that a civil action may be brought,

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or
> practice which violates any provision of this subchapter or the
> terms of the plan, or (B) to obtain other appropriate equitable relief
> (I) to redress such violations or (ii) to enforce any provisions of
> this subchapter or the terms of the plan.

29 U.S.C. 1132(a)(3).  The Supreme Court held in *Varity v. Howe,* 516 U.S. 489 (1996), that individual equitable relief is "appropriate" under § 502(a)(3) only where Congress did not provide adequate relief elsewhere in the statute. *Id.* at 515 or 512. A participant cannot seek equitable relief under § 502(a)(3), however, if the alleged violations are adequately remedied under other provisions of § 502. *Id.; Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 454 (6th Cir. 2003).

Because I have determined that Plaintiffs have a remedy under § 502(a)(1)(B) for reimbursement of the excess portion of the premiums that were not based on the cost to the Plan and a potential remedy under § 502(a)(1)(B) for prescription reimbursement, had the claim been properly alleged, they are not entitled to relief under § 502(a)(3).  *See Bowles v. Reade,* 198 F.3d 752, 760 (9th Cir. 1999) (holding that plaintiff was not entitled to relief under § 502(a)(3) where relief she sought was provided by § 502(a)(2)); *Forsyth,* 114 F.3d at 1475 (holding that plaintiffs were not entitled to relief under § 502(a)(3) where they received relief under § 502(a)(1)(B)). Defendants' motion should be granted as to claims three and four.

## III.    ERISA Pre-emption

Claims five through twelve raise issues of unfair trade practices, misrepresentation, elder abuse, and estoppel.  Defendants argue that each of these claims is pre-empted by ERISA.

In *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9ᵗʰ Cir. 2005), the Ninth Circuit

described the "two powerful strands" of ERISA preemption:

> First, ERISA section 514(a) expressly pre-empts all state laws
> insofar as they may now or hereafter relate to any employee
> benefit plan, but state laws which regulate insurance, banking, or
> securities are saved from this pre-emption.
>
> Second, ERISA section 502(a) contains a comprehensive scheme
> of civil remedies to enforce ERISA's provisions.  A state cause of
> action that would fall within the scope of this scheme of remedies
> is pre-empted as conflicting with the intended exclusivity of the
> ERISA remedial scheme, even if those causes of action would not
> necessarily be pre-empted by section 514(a).

*Id.* at 1225 (internal citations and quotations omitted). Defendants argue that Plaintiffs' claims

fall within both prongs.

**A.    State law claims**

Under the first prong of ERISA pre-emption, § 514(a), A common law claim "relates to"

an employee benefit plan governed by ERISA "if it has a connection with or reference to such a

plan." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9ᵗʰ Cir. 2004); *see also Blue*

*Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.,* 187 F.3d 1045, 1052 (9ᵗʰ Cir. 1999).

"[A] core factor leading to the conclusion that a state law claim is pre-empted is that the claim

bears on an ERISA-regulated relationship. *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*,

201 F.3d 1212, 1219 (9ᵗʰ Cir. 2000).

Here, Plaintiffs allege state law claims for unfair trade practices, misrepresentation, and

elder abuse arising out of the same facts alleged for Plaintiffs' ERISA claims, *i.e.* that Defendants

misrepresented to Plaintiffs that the First Choice 65 Plan included a prescription drug benefit,

and that Defendants charged Plaintiffs more than the cost of the Plan. Each of these claims arises

out of the participant-fiduciary relationship, a relationship that is regulated by ERISA. The claims relate to an employee benefit plan, and are therefore pre-empted by ERISA.[6]

Plaintiffs argues that their claims do not relate to the substance of the ERISA plan, and instead focus on the formation of the contractual relationship itself.  Plaintiffs rely on *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007), wherein Thurman sued Pfizer for state law misrepresentation for allegedly misrepresenting the monthly pension he would be entitled to after five years of employment.  Thurman alleged that he left his prior job to work for Pfizer because of the misrepresentations.  The court held that Thurman's claim was pre-empted to the extent that he claimed expectation damages.  His claim was not pre-empted, however, to the extent that he sought benefits lost in reliance, i.e. moving expenses, decreased wages, etc. Resolution of Thurman's claim, with regard to his reliance damages, did not depend upon interpretation of the ERISA plan.  Here, by contrast, Plaintiffs' claims are in the nature of expectation damages and do depend upon interpretation of the Plan.  Plaintiffs' state law claims, therefore, are pre-empted.

Under the second prong of ERISA pre-emption, § 502, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and therefore is pre-empted."

---

[6]The Ninth Circuit has found various state law claims pre-empted by ERISA where the underlying claim for relief is premised on a denial of benefits under an ERISA plan or where the relationship between the parties is otherwise governed by ERISA. *See e.g., Elliott v. Fortis Benefits Ins. Co.,* 337 F.3d 1138, 1147 (9th Cir. 2003) (statutory bad faith); *Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1034 (9th Cir. 2000) (breach of contract, fraud, and tortious breach of the covenant of good faith and fair dealing); *Farr v. U.S. West Commc'ns, Inc.,* 151 F.3d 908, 913 (9th Cir. 1998), *amended on other grounds,* 179 F.3d 1252 (9th Cir. 1999) (negligent misrepresentation); *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 132 (9th Cir. 1993) (wrongful death); *Lea v. Republic Airlines,* 903 F.2d 624, 632-33 (9th Cir. 1990) (negligence).

*Davila*, 542 U.S. at 209.

The two relevant sections of ERISA's civil enforcement provisions are § 502(a)(1)(B), which authorizes claims to recover benefits, and § 502(a)(3), which allows a participant to obtain "other appropriate equitable relief" to remedy a breach of fiduciary duty. As noted above, Plaintiffs have a remedy under § 502(a)(1)(B) for reimbursement of the excess portion of the premiums that were not based on the cost to the Plan and a potential remedy under § 502(a)(1)(B) for prescription reimbursement, had the claim been properly alleged. Plaintiffs' state law claims allege facts identical to those alleged for their ERISA claims. Furthermore, Plaintiffs seek remedies for their state law claims that are not recoverable under ERISA, *i.e.* economic and punitive damages. The alleged state law claims would supplement or supplant the remedies available to Plaintiffs under ERISA. Their state law claims are, therefore, also pre-empted by § 502.

Plaintiffs make two arguments against pre-emption that are common to claims five through twelve, and then make arguments directed at each individual claims. I will address the arguments common to all of the state law claims first, and then address Plaintiffs' arguments regarding the individual state law claims.

### 1.    Plaintiffs' status as participants

Plaintiffs allege they were "participants" in the plan as defined by 29 U.S.C. § 1002(7) and/or "beneficiaries" as defined by 29 U.S.C. § 1002(8). (Amended Complaint ¶ 3.) In response to the similar allegation pled in Plaintiff's original complaint, Defendants alleged that they lack sufficient knowledge to form a belief as to the truth of the allegation and deny the allegation on that basis. (Amended Answer ¶3.) Plaintiffs argue now that if they are not

participants, then there can be no pre-emption.

Recently, the Ninth Circuit has stated that "before a court wades into [ERISA's] veritable Sargasso Sea of obfuscation, it must first resolve the simpler question of whether a party may assert a claim under ERISA."  *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1105 (9th Cir. 2007) (citations and internal quotations marks omitted).

A civil action under ERISA may be brought by a "participant" in or "beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1). "ERISA does not pre-empt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan." *Miller*, 504 F.3d at 1105-06, *citing Curtis v. Nevada Bonding Corp.,* 53 F.3d, 1023 1027 (9th Cir. 1995).

ERISA defines a "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).  The Supreme Court has interpreted the ERISA definition to mean that "a party is a 'participant' if he is an employee in, or reasonably expected to be in, currently covered employment, or if he is a former employee who has a reasonable expectation of returning to covered employment, or a 'colorable claim' to vested benefits. *Miller*, 504 F.3d at 1105-06, *citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117 (1989).

Whether a living party is a "participant" or "beneficiary" is determined as of the time the lawsuit is filed.  *Miller*, 504 F.3d at 1105-06 (citations omitted).  Here, it is undisputed that Plaintiffs were not participants in the Plan at the time this lawsuit was filed, but, as discussed above, they have alleged a colorable claim for vested benefits.  Plaintiffs were participants under

Page 15 - FINDINGS AND RECOMMENDATION

ERISA.

### 2.    Earhart Co.'s status as a "fiduciary"

Plaintiffs have alleged that Earhart Co. was a fiduciary.  (Amended Complaint ¶ 5.)

Earhart Co. has denied that allegation.  (Amended Answer ¶ 5.)  Plaintiffs claim that if Earhart

Co. is correct, the Plaintiffs' claim against Earhart Co. cannot be pre-empted by ERISA.

In *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414 (9th Cir. 1990), the plaintiff

argued that her claim which did relate to an ERISA plan was not pre-empted by ERISA because

the defendant was not a fiduciary and ERISA only covers behaviors by fiduciaries.  The Ninth

Circuit disagreed.  The court noted that "section 502(a)(3) of ERISA allows equitable relief

against both fiduciaries and non-fiduciaries. The existence of some remedy for misconduct by

nonfiduciaries suggests that Congress intended to include their behavior under ERISA."  *Id.* at

417 (internal citations omitted).  The court then held that "Congress did intend ERISA to pre-

empt claims that relate to an employee benefit plan even if the defendant is a nonfiduciary."  *Id.*

at 418.  Under Ninth Circuit precedent, therefore, whether Earhart Co. is a fiduciary does not

affect the pre-emption analysis.

### 3.    Claims five and six (unfair trade practices/ORS 746.075)

Plaintiffs argue claims five and six (alleging that Defendants' misrepresentations violated

ORS 746.075(2)) cannot be pre-empted because ERISA's pre-emption includes a "saving clause"

for laws which "regulate insurance, banking or securities." 29 U.S.C. §1144(b)(2)(A).  This

clause has been held to save from ERISA pre-emption a number of state laws that require all

health insurance policies to contain certain provisions (*e.g.*, "mandated benefit" laws).

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985).  State laws that provide "rules

of decision" concerning how insurance policies are to be interpreted and applied may also

survive pre-emption, where such laws are aimed only at the insurance industry. *UNUM Life Ins.*

*Co. of America v. Ward*, 526 U.S. 358, 372-373 (1999).  However, state laws that merely provide

remedies for breaches of insurance contracts, such as unfair claim practice laws and the common

law of "bad faith," are not saved from pre-emption. *Id.*; *Norman v. Paul Revere Life Ins. Co.,*

2000 WL 33316829, *2 (W.D. Wash. 2000).

ERISA's pre-emption section also provides that neither an employee benefit plan, nor any

trust created in connection with such plan, shall be "deemed" to be an insurance company. 29

U.S.C. §1144(b)(2)(B) (the "deemer clause").  Thus, employee benefit plans that are funded

without any insurance component (*e.g.*, self-funded plans) are beyond the scope of the "saving

clause," and may not be regulated by state insurance laws.  *FMC Corp. v. Holliday*, 498 U.S. 52,

61 (1990).  Here, the Trust is a self-funded plan.  Even if Plaintiffs' claim under ORS 746.075 is

saved from pre-emption because it relates to insurance, the deemer clause prevents the

application of that law to the Trust.

### 4.    Claims seven and eight (misrepresentation)

Plaintiffs argue that their state law misrepresentation claims are not pre-empted because

they are subject to federal common law.  Plaintiffs cite no authority, however, for the proposition

that federal common law authorizes an independent misrepresentation claim against an ERISA

regulated plan. As set forth above, ERISA pre-empts Plaintiffs' seventh and eighth claims for

misrepresentation.

### 5.    Claims nine and ten (elder abuse)

Plaintiffs argue that their ninth and tenth claims, asserting elder abuse under ORS

124.100, cannot be pre-empted because there is no indication that Congress intended to pre-empt specific state health and safety regulations, which fall within the police powers of the State. Defendants argue that the alleged "abuse" relates to the statements made about benefit availability and the cost of the Plan.  Because the alleged abuse arose in the context of an ERISA-governed relationship, Defendants argue, the law should be pre-empted.

As explained above, § 514 pre-emption applies where a common law claim "relates to" an employee benefit plan governed by ERISA.  *McDowell,* 385 F.3d at 1172.  A claim "relates to" ERISA "if it has a connection with or reference to such a plan." *Id.*

Plaintiffs rely on *California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316 (1997).  In *Dillingham*, the Supreme Court considered whether ERISA pre-empted a California law requiring contractors of state public works projects to pay the prevailing wage unless the contractor hires apprentices from approved programs.  The Court held, first, that California's prevailing wage law did not refer to ERISA plans because approved apprenticeship programs in California were not necessarily ERISA plans. 519 U.S. at 325.  The Court then held that California's prevailing wage law did not have an impermissible connection with ERISA plans because the Court could discern no congressional intent to pre-empt areas of traditional state regulation with which the California law was concerned and the prevailing wage law did not bind ERISA plans to anything.

Plaintiffs also cite the court to *Shaw v. Delta Airlines Inc.*, 463 U.S. 85 (1983).  In *Shaw*, the court looked at two New York laws, the Human Rights Law, which prohibits employment discrimination on the basis of sex, and the Disability Benefits Law, which requires employers to pay certain benefits to employees unable to work because of nonoccupational injuries or illness.

Page 18 - FINDINGS AND RECOMMENDATION

The Court determined that both laws "relate to" employee benefit plans, but held that neither law was pre-empted by ERISA.  First, the court said that the Disability Law was not pre-empted, but not because it constituted an exercise of the state's police power over health and safety. Instead, the law was not pre-empted because the pre-emption clause in § 514 has an exception for "any employee benefit plan . . .maintained solely for the purpose of complying with applicable . . . disability laws."  Second, the court said that the Human Rights Law was pre-empted only to the extent that it prohibited practices that were lawful under federal law, because the court found that the Human Rights Law  was a mechanism for enforcing Title VII, and § 514(d) of ERISA provides that § 514(a) shall not "be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United Sates."  Given that the Plaintiffs have not cited, and the court has not found, such an exception for elder abuse laws, *Shaw* does not appear to govern the pre-emption question here.

As in *Dillingham*, I find that Oregon's elder abuse statute does not reference ERISA plans.  Unlike *Dillingham*, however, I find that Oregon's elder abuse statute does have an impermissible connection to an ERISA plan.

Plaintiffs argue that pre-emption is inappropriate because there is no specific indication that Congress intended to pre-empt specific state health and safety regulations, which fall within the police powers of the state.  Even if elder abuse is, as Plaintiffs argue, an area traditionally reserved for state regulation, that alone will not immunize a state law from ERISA pre-emption. *Dillingham*, 519 U.S. at 330.   In *Dillingham*, the court noted that "ERISA certainly contemplated the pre-emption of substantial areas of traditional state regulation."  The prevailing wage law was not pre-empted because "[t]he wages to be paid on public works projects and the

substantive standards to be applied to apprenticeship training programs are, however, quite remote from the areas with which ERISA is expressly concerned – reporting, disclosure, fiduciary responsibility, and the like.  A reading of § 514(a) resulting in the pre-emption of traditionally state-regulated substantive law in those areas where ERISA has nothing to say would be unsettling." *Id.* (internal citations and quotations omitted). Here, unlike the prevailing wage law, Plaintiffs' elder abuse claim is based on an area with which ERISA is expressly concerned, *i.e.* fiduciary responsibility.

Furthermore, unlike the prevailing wage law in *Dillingham*, Plaintiffs' elder abuse claim arises in an ERISA-governed relationship and does not implicate any other form of relationship, such as employment, between the parties.  But for that ERISA-governed relationship, the claim in the present case would not exist.

In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), the Court held a state common law claim that an employee was wrongfully discharged to prevent his attainment of benefits under an ERISA plan was pre-empted by ERISA, concluding that the existence of the plan itself was a critical element of the cause of action. *Id.* at 139-140.  In other words, without a plan, there would be no cause of action.  Here, Plaintiffs' elder abuse claim is premised upon representations made about the availability of benefits and the cost of the plan.  As in *Ingersoll-Rand*, the existence of the Plan is necessary for the cause of action. I find, therefore, that Plaintiffs' claim under ORS 124.100 has a connection with ERISA and is pre-empted under § 514.

Plaintiffs' elder abuse claims are also pre-empted under §502(a). Under ORS 124.100, a "vulnerable person," which includes a person 65 years of age or older, "who suffers injury,

damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse." Plaintiffs' claims nine and ten allege facts identical to those alleged for their ERISA claims. And ORS 124.100 authorizes the court to award economic damages, including treble damages and attorney fees, which are not available under ERISA.

### b.    Claims eleven and twelve (estoppel)

Defendants moved for summary judgment on Plaintiffs' eleventh and twelfth claims, arguing that a state law estoppel claim is pre-empted by ERISA. *See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992), *citing Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985) ("ERISA pre-empts state claims based on equitable estoppel."). In their response, Plaintiffs argued that their estoppel claims are not pre-empted because they are subject to federal common law rather than state law. *See Greany*, 973 F.2d at 821 (citations omitted) ("[F]ederal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA."). Defendants argued, and the court agreed, that Plaintiffs had failed to allege a federal common law estoppel claim in their complaint. At oral argument, I granted Plaintiffs' oral motion for leave to amend their complaint to address this problem.

Plaintiffs have filed their Amended Complaint, and I find that they have properly alleged the prerequisites for a federal common law estoppel claim. Specifically, Plaintiffs allege that the Plan's description of prescription drug benefits and the amount and basis for the Plan premiums is ambiguous, and that Defendants made written and oral representations purporting to clarify the ambiguous Plan language. *See Greany*, 973 F.2d at 821 (holding there are two prerequisites to an equitable estoppel claim in an ERISA action: (1) the provisions of the plan must be

Page 21 - FINDINGS AND RECOMMENDATION

ambiguous such that reasonable persons could disagree as to their meaning or effect; and (2) representations must be made to the employee involving an oral interpretation of the plan).

The issue before the court, however, is whether Defendants are entitled to summary judgment on claims eleven and twelve.  While the court has some concern about the viability of a federal estoppel claim against the Trust,[7] the parties have not addressed claims eleven and twelve, as amended, in their briefing or oral argument and the court is not prepared to address this motion on the merits.  Defendants' motion is, therefore, denied as moot with respect to claims eleven and twelve, with leave for the parties to file a supplemental motion for summary judgment on Plaintiffs' estoppel claims.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgement [No. 9] should be GRANTED IN PART and DENIED IN PART as follows: GRANTED as to claims one, three, four, five, six, seven, eight, nine, and ten, and DENIED as to claims two, eleven, and twelve.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 27, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If

---

[7] The Ninth Circuit has stated that a trust fund can never be equitably estopped where payment would conflict with the written agreement. *Davidian v. Southern Cal. Meat Cutters Union and Food Employees Benefit Fund,* 859 F.2d 134, 136 (9th Cir. 1988).

Page 22 - FINDINGS AND RECOMMENDATION

objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 13th day of December, 2007.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge